## LEVIN v. BARKER.

### No. 12047.

Circuit Court of Appeals, Eighth Circuit.

Oct. 23, 1941.

Rehearing Denied Nov. 14, 1941.

Joseph Chused and Morris J. Levin, both of St. Louis, Mo. (Ellison A. Poulton and Simon Reznikoff, both of St. Louis, Mo., on the brief), for appellant.

George O. Durham, of St. Louis, Mo. (Barker, Durham & Drury, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order of the lower court which modified an order of the referee in bankruptcy by allowing attorney fees to Harry C. Barker in the sum of $10,000 for his services as attorney for the receiver appointed in the matter of the estate of Harold J. Kattelman, bankrupt, instead of the sum of $5,000 allowed by the referee as compensation for such services.

At the time of bankruptcy, Kattelman, who operated a brokerage and securities business, had in his possession certain assets and securities belonging to his customers. The general assets of the estate at the time for final distribution amounted to $11,707.63. In addition to the general assets which belonged to the estate, the trustee secured possession of some $31,794.69 in cash and securities which were specifically identified as the property of customers of Kattelman and whose reclamation petitions had on hearing been allowed by order of the court. We gather that a receiver had been appointed in aid of the bankruptcy, although that is not very clearly shown by the record. In any event, the services rendered on behalf of the estate were all rendered after the adjudication in bankruptcy was entered. The character and extent of legal services and the circumstances under which they were rendered are stated by appellee as follows:

"Prior to July, 1935, Harold J. Kattelman had, over a period of years, been conducting a 'bucket shop' in the City of St. Louis. He

had elaborate offices and twenty-eight or thirty telephones. He had had trouble with the S. E. C. and the Income Tax Department and it was through that trouble that Mr. Barker ultimately acquired information which led to his success in reclaiming the assets concealed by Mr. Kattelman.

"In his business Kattelman had defrauded a large clientele of their money and upon the appointment of Mr. Barker as attorney for the Receiver the many distraught victims of Kattelman beseiged him. In addition to the services rendered by Mr. Barker a substantial portion of the time of his partners and the junior members of his firm was also consumed in assisting in the litigation and in library and office work without compensation except such as might result to them through the appellee.

"Mr. Barker's character and high standing at the bar is not challenged and his skill and industry is indicated by the success achieved by him in recovering from Kattelman the assets against which he claims an equitable lien for his services.

"When Mr. Barker was appointed for the Receiver it was known that Kattelman had been conducting a fraudulent business over a long period of time and that he was confronted with the penitentiary in any case; that in anticipation of the final showdown with his victims he had apparently succcessfully concealed all his remaining assets, as well as the securities entrusted to him by his clients and the noncreditor claimants; that he had hidden or destroyed all his records and was refusing to answer any question relating to his records or assets or to give any information on account thereof, claiming that by so doing he might incriminate himself or the recipients."

Barker's services consisted chiefly in obtaining a turnover order. This order was secured November 23, 1935 and directed the bankrupt to turn over to the receiver certain stocks and bonds, books and records and the sum of $39,205 in cash. For refusal to comply with this order the bankrupt was committed to the county jail and after numerous appeals concerning the turnover and his commitment thereunder, Kattelman was indicted and pleaded guilty to certain criminal charges. Mr. Barker participated in numerous conferences and in the preparation of numerous pleadings and appeared in court, both trial and appellate, a number of times. Applications for fees aggregating approximately $30,000 were filed by the receiver, the trustee, the attorneys, the trus-

tee's accountant, and the attorneys for the petitioning creditors. Mr. Barker asked for a total allowance of $12,500 for his services. He testified in his own behalf before the referee. He had been appointed as attorney for the receiver and he had been paid on account of services $2,500. The period of these services continued until March, 1937, a period of approximately twenty months. $10,500 face value of stocks and bonds which had been reclaimed were recovered at an examination conducted by the attorney for the trustee, and the recovery of certain cash from relatives of Kattelman was the result of an action conducted by the attorney for the trustee. There was testimony before the referee consisting of the opinion of a number of lawyers as to the value of the services. At the conclusion of the hearing the referee allowed total fees in the following amounts:

| | | |
|---|---|---|
| William S. Madden, Receiver | $ | 720.55 |
| Morris J. Levin, Trustee | | 726.22 |
| James C. Thompson, accountant | | 2,162.00 |
| Harry C. Barker, Attorney for Receiver | | 5,000.00 |
| Ellison A. Poulton, Attorney for Trustee | | 7,500.00 |
| Attorneys for Petitioning Creditors | | 1,000.00 |
| | | $17,108.77 |

The referee entered findings upon which he based the order allowing fees to the respective parties. Appellee petitioned for review of the order, alleging that the amount of the award was inadequate and unreasonable in consideration of the enhancement of the bankrupt estate resulting from his professional services, and asked that a reasonable and adequate award be made to him and that a commensurate portion thereof be charged against the recovered assets of the intervening creditors. The lower court heard no evidence but tried the case upon the record made before the referee, entered no findings, but modified the referee's order as hereinbefore indicated. From this order the trustee has appealed.

Appellee has moved to dismiss the appeal on the ground that the trustee is not an aggrieved party. The order appealed from adjudged that Harry C. Barker "have and recover of the bankrupt estate the balance of the fee hereinbefore allowed him as attorney, to-wit; the sum of $7,500.00." The bankrupt estate acts only through its trustee. If the bankrupt estate is the ag-

grieved party, the trustee as its representative is the proper party for prosecuting the appeal. 8 Remington on Bankruptcy, 4th Ed., Sec. 3634; Chatfield v. O'Dwyer, 8 Cir., 101 F. 797, 799. In the last-cited authority it is said: "The trustee is elected by, and is the representative of, the creditors; and, following the general analogies of the law, he is the appropriate person to see that no unjust or fictitious claims are allowed to be paid out of the assets in his hands."

■ The motion to dismiss is without merit and is therefore denied.

Section 47 of the General Orders in Bankruptcy, which in its present form became effective February 13, 1939, 11 U.S.C.A. following section 53, provides as follows: "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous."

■ The referee, as already pointed out, made findings of fact and conclusions of law and when the matter came before the judge for review the question presented was whether or not these findings were clearly erroneous. The judge made no finding on this issue but simply entered an order modifying the order of the referee by increasing the allowance of attorney fees. It is argued that the findings of the trial court are to be accepted on appeal unless clearly erroneous, but here the trial court made no findings, and if we clothe the order appealed from with the presumption of correctness, that presumption is weakened by the fact that the court made no finding on the direct issue, and its order is in conflict with that entered by the referee, which latter order is based upon proper findings.

■ Many elements may properly be taken into consideration in determining a reasonable fee for services rendered by the attorney. Among these may be named (1) the time spent; (2) the intricacy of the questions involved; (3) the size of the estate; (4) the opposition encountered; (5) the results obtained; and (6) the economic spirit of the Bankruptcy Act.

In West v. Fradenburg, Webb, Beber, Klutznick & Kelley, 8 Cir., 86 F.2d 318, 321, we considered a claim for legal services rendered under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. In the course of the opinion written by the late Judge Faris it is said: "It is trite to say that section 77B of the Bankruptcy Act (11

U.S.C.A. § 207) was passed for the benefit of ailing business, and not entirely for the benefit of the Bar."

In Realty Associates Securities Corp. v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 665, 79 L.Ed. 1446, the Supreme Court said: "Extravagant costs of administration in the winding up of estates in bankruptcy have been denounced as crying evils. * * * Congress meant to hit the evil of extravagance, and that the meaning of its words, if doubtful, must be adapted to its aim."

In Stark v. Woods Bros. Corp., 8 Cir., 109 F.2d 969, 973, we said: "It is the duty of courts to protect estates confided to their supervision from 'vicarious generosity' in the matter of attorney fees."

In Blackhurst v. Johnson et al., 8 Cir., 72 F.2d 644, 648, we said:

"We again reiterate what is said by the Supreme Court in Re Gilbert, supra [276 U. S. 294, 48 S.Ct. 309, 72 L.Ed. 580] : 'We were desirous of making it clear by our action that the judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance.'

"After all, the trust was created for and is to be administered in the interest of the ultimate beneficiaries. 'The rights of those who ultimately pay must be carefully protected.' Newton v. Consolidated Gas Co., 259 U.S. 101, 42 S.Ct. 438, 439, 66 L.Ed. 844. One of the judicial abuses which subjects our courts to much just criticism is the tendency to absorb property which comes into the control of a court, by making allowances for attorney fees and other expenses pending the litigation payable out of the trust fund." See, also, Federal Oil Marketing Corp. v. Cravens, 8 Cir., 46 F. 2d 938.

■ It does not appear what amounts had already been paid in the course of the administration of this estate prior to the order entered by the referee February 27, 1941. It does appear that the gross estate amounted to $58,000 and that prior to the final allowance of expenses and attorney fees the gross estate had shrunk to $43,502.-32. How much of this shrinkage may have been devoted to expenses of administration is not shown but it does appear that appellee had received on account of fees the sum of $2,500 and the estate was, of course, subject to taxation. When ready for distribution the total assets amounted to $43,-502.32, against which, if appellee's fee be

allowed, the expenses chargeable would be $22,108.77, or 51 per cent of the total estate, of which total estate only $11,707.63 was general assets and the balance consisted of assets specifically identified as property of customers of the bankrupt. Some regard must be had for the ability of the client to pay and also for the "economic spirit of the Bankruptcy Act."

 It is contended by appellee that it was through his efforts that the estate was augmented and that equitably his claim should be a prior lien on the assets. That question, we think, is not before us because attorney fees may only be allowed in bankruptcy proceedings as provided in the Bankruptcy Act, and all of the services rendered were rendered while the estate was in bankruptcy. It is to be observed also that the claim was not allowed as a prior claim, and no appeal has been taken by the appellee. It is also argued that appellee's services were rendered on a contingent basis, under circumstances where payment of any fee was doubtful. An analysis of the record shows that this contention is not tenable. At the time of the bankruptcy adjudication there was an estate of cash value exceeding $16,000 on hand then available. These assets came into the receiver's hands in the normal course of administration within a few days after his appointment. They were all received without any special effort on behalf of the appellee; they were not concealed nor withheld, so that at least $16,000 of the estate could not be said to have been created by the appellee, nor can it properly be said that his employment was on a contingent fee basis. Again, it appears that nearly $10,000 was collected as rentals from the bankrupt's estate. The record title of this real estate was in the bankrupt, and hence, the real estate was not concealed, so that neither the receiver nor the trustee were required to render any special services in collecting these rents. Appellee claims to have recovered for the estate $13,000 in cash from the bankrupt's relatives. It appears from the record, however, that this amount was recovered in actions brought by the trustee and his attorney in the District Court of Colorado, and not by appellee. It also appears that it was the trustee and his attorney who made the first discovery of concealed assets covered by the turnover order resulting in a recapture of $10,500 in concealed securities from the bankrupt's mother-in-law.

To summarize, it appears clearly that there was in the estate, or collected by the trustee without any effort or services on behalf of the appellee, the following items: assets on hand at time of bankruptcy, $16,000; rents collected, $9,800; cash recovered in trustee's suit, $13,000; securities recovered by trustee from Mrs. Logeman, $10,500, making a total of $49,300. If we assume that the appellee created the balance of the estate, it would seem that $8,700 should be credited to his efforts. An allowance of $10,000 for services rendered, in view of all the circumstances, and considering all the elements that may properly be taken into consideration in determining what is a reasonable fee, is, we think, excessive. We are of the view that the allowance made by the referee was a liberal one.

 Ordinarily the functions of a receiver appointed in bankruptcy proceedings cease with the appointment of a trustee. Thereafter there should be no occasion for the services of either a receiver or his attorney. 1 Remington Bankruptcy, Sec. 431. Apparently, claim is made for services rendered after the appointment of trustee. Estates should not be unnecessarily burdened with the expenses of a receivership after the appointment of a trustee in bankruptcy. As the point is not here urged by appellant, we pursue it no further.

The order appealed from is therefore reversed and the case is remanded with directions to enter an order confirming and approving the order of the referee allowing attorney fees to appellee.