## In re COOK'S MOTORS, Inc.

No. 64900.

District Court, D. Massachusetts.

Dec. 6, 1943.

Frederick M. Myers and Stephen B. Hibbard, both of Pittsfield, Mass., for Berkshire Trust Co., creditor, and Stephen B. Hibbard, trustee in bankruptcy.

Lincoln S. Cain, of Cain & Chesney, all of Pittsfield, Mass., for Gar Wood Industries, Inc., creditor.

WYZANSKI, District Judge.

Pursuant to § 39, sub. c, of the Bankruptcy Act, Act of June 22, 1938, c. 575, 52 Stat. 840, 858, 11 U.S.C.A. § 67, sub. c, The Berkshire Trust Company, a creditor of the bankrupt, has petitioned this Court for review of Referee Stevens' order allowing priority to the $813.90 claim of Gar Wood Industries, Inc., another creditor of the bankrupt.

The statute, § 64, sub a(1), of the Bankruptcy Act, Act of June 22, 1938, c. 575, 52 Stat. 840, 874, 11 U.S.C.A. § 104, sub. a (1), under which the referee allowed priority, provides that "the debts to have priority * * * shall be (1) * * * where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the bankrupt by the efforts and at the cost and expense of one or more creditors, the reasonable costs and expenses of such recovery * * *."

Gar Wood initiated its claim under this section of law by filing with the referee a sworn proof of priority claim. In substance, that document stated that before bankruptcy the bankrupt transferred $2,563.30 to the Trust Company; that Gar Wood over many months repeatedly requested the trustee in bankruptcy to take the necessary steps to recover these funds; that Gar Wood's representatives conferred with the representatives of the Trust Company; that the Trust Company filed a motion before the referee as a step toward being allowed to keep these funds as a set-off; that Gar Wood successfully opposed that motion; that, as a result of Gar Wood's efforts the Trust Company turned over to the trustee in bankruptcy $2,563.30; and that Gar Wood incurred itemized out-of-pocket expenses of $63.09 for stenographic and witness fees and for telephones and $750 expenses for the services of attorneys. The petition came before the same referee who had sat in all the preceding stages of the bankruptcy. At that time he heard some further evidence relating to matters other than the size of the fee. The referee ordered that the claim of $813.90 be allowed in full and given priority.

■ There can be no doubt that the Trust Company is entitled to seek a review of the referee's order. Its claim has been diminished in value by the allowance of another claim and by the admission of that claim to priority. The Trust Company, therefore, is an "aggrieved person" within the meaning of § 39, sub. c, of the Bankruptcy Act. Cf. Lawless v. Securities & Exchange Commission, 1 Cir., 105 F. 2d 574, 578. Moreover, the trustee in bankruptcy having also sought review, there is another handle by which this Court can take and does take jurisdiction of this case.

■ The first important question is what evidence the referee has a right to consider in forming his judgment as to whether services were rendered by Gar Wood and what their value was. The referee can plainly take into account the sworn proof of claim. "A sworn proof of claim is some evidence, even when it is denied." Whitney v. Dresser, 200 U.S. 532, 536, 26 S.Ct. 316, 317, 50 L.Ed. 584. He may also take into account any services, such as oral or written arguments, which he personally observed the creditor perform during hearings in connection with or proceedings for the administration of the bankrupt's estate. Tracy v. Spitzer-Rorick, Trust & Savings Bank, 8 Cir., 12 F.2d 755, 756. The underlying principle is that these services are a form of real evidence or autoptic proference. Wigmore, Evidence, 3rd Ed. §§ 24, 1169. And courts commonly take such services into account without requiring supplemental proof through witnesses on the stand. Cf. Hutchinson v. William C. Barry, Inc., D.C.Mass., 50 F.Supp. 292, 296. However, it is clearly desirable for a referee or court which does fix a fee upon facts learned in open court but not appearing on a written record to state those facts expressly. Otherwise the parties and appellate courts cannot know the basis of his action and hence cannot effectively review it.

■■ On the basis of the evidence before him, so far as disclosed in the record before the Court, the referee could reasonably have found as facts, that the bankrupt transferred assets to the Trust Company; that the trustee in bankruptcy and his counsel, when requested by Gar

Wood, refused to take steps to recover those assets; that the identical counsel represented both the Trust Company and the trustee in bankruptcy; and that the efforts of Gar Wood led to the recovery of assets which would not otherwise have been available for the benefit of the estate. There was a reasonable basis for the referee's findings of fact, and I agree with them.

The question for this Court is whether even on his findings the referee could as a matter of law conclude that Gar Wood's claim was entitled to priority under Section 64, sub. a(1).

The first part of this inquiry turns on the issue whether a creditor may make a valid claim for priority under Section 64, sub. a(1), of the Bankruptcy Act if he took the steps for which he seeks compensation without having first secured authorization from the referee. Apparently the established rule in several circuits is that under ordinary circumstances a creditor cannot receive any compensation whatsoever unless he has such authorization. In re Eureka Upholstering Co., 2 Cir., 48 F.2d 95, 96; In re Progress Lektro Shave Corporation, 2 Cir., 117 F.2d 602; Cox v. Elliott, 8 Cir., 122 F.2d 851, 852; Cf. Steere v. Baldwin Locomotive Works, 3 Cir., 98 F.2d 889, 891.

The reason for the rule is that usually the trustee and his counsel, each of whom has an official appointment, are the proper persons to determine whether a claim is worth prosecuting and to act in the light of their determination. A third person is often merely an officious intermeddler who may have partisan interests and who is quite likely to complicate and make more expensive the administration of the bankrupt's estate. However, even in some of those circuits where the ordinary rule denies compensation to a volunteer creditor acting without advance authorization, the rule would probably not be applied in a case where a trustee in bankruptcy or his counsel is involved in a conflict of interest. In re New York Investors, Inc., 2 Cir., 130 F.2d 90. But see Cox v. Elliott, supra. Such an exception exists in the case at bar. The trustee in bankruptcy and one of the creditors, that is, the Trust Company, had identical counsel; another creditor, that is, Gar Wood, first asked the trustee in bankruptcy to proceed and having met a refusal took upon itself the burden of contesting the Trust Company's

claim. In this situation the lawyer who acted as counsel both for the Trust Company and for the trustee in bankruptcy was plainly disqualified to act for the trustee against the Trust Company. He, and indeed the referee himself if he knew the conflict of interest, were both derelict in permitting this situation to continue. Where there is a conflict of interest of this sort and where the trustee in bankruptcy refuses to act, in my opinion the reason for the rule laid down in the case of In re Eureka Upholstering· Co., supra, disappears and the vigilant creditor may recover compensation under Section 64, sub. a(1), even though he failed first to secure authority from the referee. However, it should be added the better practice is for the creditor to be prudent as well as vigilant and to secure advance authorization.

The second part of the inquiry under Section 64, sub. a(1), is whether when, the trustee in bankruptcy having refused to act, a general creditor recovers for distribution among all claimants an asset which another creditor held as partial security for his claim, that asset can be regarded as having been recovered, in the words of the Statute, "for the benefit of the estate", or, on the contrary, only for some creditors at the expense of other creditors. In one sense, it is true that the estate itself is not enriched, for the margin between liabilities and assets has not been narrowed by the recovery. And yet, speaking loosely, Congress might correctly use the phrase to describe services which made assets available for general as distinguished from special distribution. Indeed, just such broad usage of the identical phrase appears in the sections governing preferential and fraudulent transfers. Section 60, sub. b, and § 67, sub. a(3), 11 U.S.C.A. § 96, sub. b, and § 107, sub. a(3). Moreover, such broad usage is consistent with what appears to be the intent of the section, that anyone who justifiably and successfully acts in the place of the trustee in bankruptcy and not merely for his separate individual interest should stand in the trustee's shoes for the purpose of recovering his reasonable expenses. Therefore I am of opinion that the referee correctly concluded as a matter of law that on his findings the claim of Gar Wood was entitled to priority. In re Stearns Salt & Lumber Co., 6 Cir., 225 F. 1, 5; In re Phoenix Hotel Co., of Lexington, Ky., D. C.E.D.Ky., 20 F.Supp. 240, 242; In re

Gem Stores Co., D.C.E.D.Ky., 23 F.Supp. 779.

Gar Wood being entitled to priority, the only other point relates to the amount of the claim. Where, as here, the referee presumably took into account not only what the parties formally offered as evidence but also what the referee himself observed, it is difficult to know on what his findings of value are based. There is plainly support for the small amounts allowed for stenographers, witnesses and telephones. But on the record as certified there is no sufficient evidence to sustain a finding that the attorneys' services were worth $750 even if Gar Wood has actually paid that much out of pocket to its lawyers and now seeks only reimbursement and not exoneration. Under the most generous estimate it would appear that Gar Wood recovered for the benefit of the estate $2,563.30, and quite possibly the amount is only half of this. There is unfortunately no detailed showing as to how much time or how many types of legal service this recovery entailed. And hints in the record would indicate that the amount allowed is several times too large in the light of what In re Consolidated Distributors Inc., 2 Cir., 298 F. 859, 862, teaches is the appropriate standard for services rendered to insolvent estates.

The record being barren of the detailed facts essential to a determination of a proper fee, the order of the referee is set aside with instructions to him to find the subsidiary facts as to what services were rendered, and also to find the ultimate fact as to what, in the words of § 64, sub. a(1), were the "reasonable costs and expenses" of such services.

Referee's order set aside.