**In re ALTA VINEYARDS CO.**

**No. 6371.**

United States District Court
S. D. California, N. D.

July 15, 1949.

Samuel F. Hollins, Fresno, Cal., for the trustee, Earle M. Jones.

James M. Conners and Jerome Politzer, San Francisco, Cal., for petitioning creditors and committee of unsecured creditors.

John D. Chinello, Fresno, Cal., for J. B. Perenchio and Fresno Grape Exchange.

John W. Guerard, Fresno, Cal., for Philadelphia Acceptance Corporation.

David S. Davis, Fresno, Cal., for certain secured creditors.

M. D. Mackie, Scranton, Pa., for Third Nat. Bank of Scranton, Pa.

YANKWICH, District Judge.

There is under submission the petition of Rueben G. Hunt, Jerome Politzer, and James M. Conners, filed on April 1, 1949, as attorneys for the committee of unsecured creditors, for allowance of compensation and expenses in the total sum of $4,000.

The matter was fully presented at the hearing yesterday, and I indicated to counsel at the time my reaction to the facts and the law applicable to it. I took the matter under submission in order to clarify my thoughts on the matter, and give further study to the circumstances under which the appointment of the petitioners as counsel for the committee was made.

While I indicated yesterday sufficiently, without making a definite ruling, what the objections to the allowance of any portion of the amount were, I wish to add some additional observations on the subject.

I am satisfied from a study of the portion of the transcript dealing with the matter (to be referred to as Philadelphia Acceptance Corporation's Exhibit A,) that Judge Campbell E. Beaumont, at no time, intended that there be any demand for fees by the attorneys for the committee, unless the committee achieved a substantial benefit to the estate. A study of the colloquy between the court and counsel, and counsel for the other creditors who were present and opposed this appointment, leads to the conclusion that the "substantial benefit" contemplated was some extraordinary service which would result in either disclosing unknown assets or changing assets of little value into valuable assets, or bringing into the estate assets which could not, but for the work of the committee and their counsel, have been brought in.

In the portion of the transcript submitted several things stand out. First of all, that this committee, in reality, represented not all the unsecured creditors, but a small group of unsecured creditors for whom they actually appeared in the case and more particularly the unsecured petitioning creditors who had instituted this proceeding in bankruptcy. This proceeding began with that petition, and, whatever may have been the undisclosed object of the petitioners, the disclosed object, so far as the records of this court show, was to have the company declared insolvent and secure a decree adjudicating it a bankrupt. Later on, came the intervention of the debtor which turned the proceeding into a reorganization proceeding. So that the position of the particular creditors was entirely different from the position of ordinary creditors who are brought in as a group into a case when the petition for reorganization originates with the debtor himself.

At all times, the attorneys who now seek to recover fees represented primarily the three creditors for whom the petition was filed. And this was made very plain at the very beginning of these proceedings on March 18, 1948. Counsel stated, at the time, that the object was to represent those creditors, and whatever benefit accrued to others was merely incidental to that representation. The court, addressing Mr. Davis, said, "Have you something further, Mr. Davis?"

"Mr. Davis: I wanted to say one thing. Mr. Conners, Mr. Politzer, and Mr. Rowe constantly referred to the unsecured creditors. I hope they will confine that to that small segment which they represent.

"The Court: Yes, they speak for nobody but themselves, thus far. They are here representing certain unsecured creditors, and it is their position that what they do on behalf of their own clients, the unsecured creditors they represent, naturally will react to the benefit of all unsecured creditors."

So it was not, at any time, represented to the court, nor was it the intention of the court, to appoint counsel to represent generally all the unsecured creditors.

Then Mr. Guerard made this observation:

"May I offer a suggestion, which I offer in all spirit of helpfulness, Your Honor.

"My clients instructed me to oppose this petition on two bases: one was their dissatisfaction with the appointment of Mr. Mattei, and the other was that they didn't feel that money of the debtor should be spent to support a committee which, in effect, was duplicating the work charged to

the Trustees. Counsel have stated, and I think we are pretty close to reconciliation on the point, unless the committee accomplishes some benefit and recovers some assets which are worth while for the benefit of the estate, they won't ask for compensation."

That was made as a positive statement, and it was not denied by Mr. Conners at the time of the hearing. There is no hiatus. If Mr. Guerard's statement did not represent a correct understanding of the representation of Mr. Conners, that was the time for Mr. Conners to speak. But he did not speak.

Then the court made this observation, no one having disputed Mr. Guerard's statement:

"The court has put it on this basis: There must be a substantial benefit.

"Mr. Guerard: My clients will be perfectly happy with that proviso. The only question, then, that remains with which my clients would be dissatisfied is the question of Mr. Mattei * * *".

What follows does not concern us.

So it was made quite plain by the representatives of the creditors that they understood that the request for the appointment of the committee and the employment of counsel by it was conditioned upon the fact that there would be no fee asked unless the activities of the committee were not such as would merely duplicate the work of the trustees, but, on the contrary, resulted in substantial benefit, to use Judge Beaumont's phrase. And the substantial benefit which the opponents had stressed was the bringing into the estate of assets worth while. It was only after the court had stated its understanding of those limitations that Mr. Guerard stated that he was perfectly well satisfied with that proviso.

In judging a matter of this character which took place in the presence of another judge, we always have to bear in mind not only what was spoken at the time, but the background against which it was spoken. And the background, which is implicit in the words Judge Beaumont and counsel for the objectors used, is the fact that it is not the policy of bankruptcy law to encourage outsiders to perform the work of the trustee. The courts have denied compensation for services, concededly valuable, rendered by representatives of creditors, when they were voluntary in character and of the type which the trustee was required to render. See, In re Owl Drug Co., D.C.Nev.1936, 16 F.Supp. 139; In re Charles Ray Glass, D.C.Cal.1942, 47 F.Supp. 428. In re New York Investors, 2 Cir., 1942, 130 F.2d 90, 91, states the rule: "In these cases we in effect held that it was the duty of a trustee to perform all services requisite to the administration of the estate and that compensation could not be awarded from the estate to others than himself and his duly authorized attorneys and agents (1) unless they benefited the estate and (2) unless the trustee refused to act and formal authorization was procured from the court to proceed in his stead. In re Progress Lektro Shave Corporation, 2 Cir., 117 F.2d [602] at page 604."

There is another principle which is concomitant to the one just stated, and that is, whether we deal with straight bankruptcy or reorganization, attorneys for petitioning creditors are entitled to compensation only to the extent of the services they render in preparing the petition and filing the schedules, and in performing other necessary legal steps up to the time of the appointment of the trustee.

It was pointed out in the Owl case, supra, that the attorneys for the petitioning creditors rendered valuable services in participating in the many proceedings before the court and on appeal, only to have the court deny compensation upon the ground that the service were a mere duplication of those of the trustee, and for which the estate should not compensate them.

We are not confronted with voluntary services in this case. The court recognized this committee and the appointment of the attorneys to represent it.

For the present, I am confining myself to a declaration of the principles which govern these matters, in the light of which, what was said at this hearing on March 18, 1948, must be considered. The evidence before the court shows clearly that the members of the committee never held any formal meetings, and that they were not consulted about the progress of the liqui-

dation. One member of the committee, who represented the Pacific Gas and Electric Company, stated from the witness stand that the only reason he knew what was going on was because he informed himself about all matters; that he, who was the head of the committee, was not consulted and did not participate in any of the negotiations leading to the consummation of the plan of reorganization, and that, in his own opinion, the efforts of the committee were a complete failure.

In looking for something concrete accomplished by the committee, we are forced to the conclusion, which counsel themselves verify, that compensation is sought for the work done in assisting in the reorganization.

The record before the court clearly shows that the main work in the reorganization was that of the trustee in collaboration with the attorneys representing other creditors, especially Mr. David S. Davis, who represented the banking interests. While the development of the plan was taking place, substantial allowances were made to trustee for his work in the case. An allowance of $10,000 was made to the attorney for the trustee for the period which preceded the mailing of the plan to the interested parties for approval, and a substantial allowance has been made to the trustee for work in conjunction with the consummation of the plan afterwards.

█ Under the circumstances, no allowance whatsoever should be made to the attorneys who represented primarily the three petitioning creditors, for any participation in the discussions which led to the consummation of the plan.

Counsel have called my attention to several cases which they think indicate a more lenient and liberal attitude towards allowance of fees in cases of this character than the cases which I had in mind, including my own. Attention has already been called to the fact that one of the chief cases did not go against my views but, on the contrary, sustained them. I refer to In re New York Investors, 2 Cir., 1942, 130 F.2d 90. That case indicates clearly that the court took the view that only where attorneys for creditors, or for a group of creditors, render services which could not have been rendered by others, are they entitled to compensation. In the particular instance, the Reconstruction Finance Corporation had appeared in the case, had objected to the trustee's fees, had been successful in reducing them in a considerable amount, had prosecuted successfully an appeal. Under the circumstances, the court held that, as the trustee and his attorney were not likely to have undertaken the labor of defeating the trustee's effort to secure high compensation, it would be unfair to the Reconstruction Finance Corporation, a public body, whose entire capital stock is owned by the Government, whose funds are furnished by the Government, not to compensate them for doing work which no one else could have or would have done, and which actually resulted in saving a good deal of money to the estate, by reducing the fee requested by the trustee. The case has been so interpreted: In Re Mt. Forest Fur Farms of America, Inc., 6 Cir., 1946, 157 F.2d 640, 641, 644–647. And I find nothing in the other cases referred to which goes counter to the principles enunciated.

In re Middle West Utilities Company, D.C.Ill.1936, 17 F.Supp. 359, merely held that in the particular case, the attorneys for various groups had rendered services for which there should be compensation. But, even in making the allowances, the court was very clear in stating that it did so because particular difficulties were involved and the services rendered in conjunction with the plan of reorganization were of particular value. I quote:

" * * * The court has given consideration to the contribution which each of the petitioners made to the plan as modified and approved by the court. The rules applied in placing a value upon the services of the petitioners in this respect have been stated above. One additional comment should be made. Some of the interveners represented parties whose interests were relatively small. The value of the interest represented by an attorney is one of the elements which must be considered in fixing a fee. Otherwise, every bondholder or stockholder in a proceeding

might employ an attorney who would give a large amount of time to attending meetings and hearings, and discussing proposed plans and claim an allowance on account of services many times more than the value of the securities represented by him.

"With reference to the work in connection with the formulation of the plan, it should be said that the property to be reorganized was a large one. The assets consisted largely of securities in other companies. There were many difficult problems to solve. There were honest differences as to value. However, it must be said that the attempts of parties in interest to fix on the one hand unreasonably low values for the property and on the other excessively high values were not helpful to the court." 17 F.Supp. at page 376.

I do not think that this decision, and particularly the portion referred to, is very helpful in the solution of this problem. On the contrary, it indicates that in many of these proceedings there is a good deal of lost motion and the trial court should be careful not to allow such lost motion to transmute itself into attorneys' fees.

In Re Cook's Motors, Inc., D.C.Mass. 1943, 52 F.Supp. 1007, the question before the court was whether allowance should be made to a creditor for services which he had rendered in conjunction with the estate. The question arose in a straight bankruptcy case, and it appeared clearly that as a result of the proceeding a recovery of $2,500 of assets of the estate was made. The court, therefore, allowed the sum of $570 as compensation. The entire opinion stresses the fact that the fee for which compensation was granted was for services which resulted in the recovery of assets. The opinion went so far as to hold that the fee should have priority for that reason. The court uses this significant language: " * * * Moreover, such broad usage is consistent with what appears to be the intent of the section, that anyone who justifiably and successfully acts in the place of the trustee in bankruptcy and not merely for his separate individual interest should stand in the trustee's shoes for the purpose of recovering his reasonable expenses. Therefore I am of opinion that the referee correctly concluded as a matter of law that on his findings the claim of Gar Wood was entitled to priority." 52 F.Supp., at page 1009.

Here, again, the emphasis is on doing work which could not, under the circumstances, have been done by the trustee and which has resulted in benefit to the estate.

In re Equitable Office Building Corporation, D.C.N.Y.1949, 83 F.Supp. 531, involved the reorganization of a New York Office Building and the operation of the building during a trusteeship. The opinion is written by Judge John C. Knox, Chief Judge of the Southern District of New York, a judge of long experience in the field of bankruptcy, and who has had more than a quarter of a century of service in the busiest district in the United States. There were many applications for fees in that case. The particular application, which counsel in this case think bears upon their application, is the application of Doyle, a demand for a fee of $25,000, which was reduced by the court to $10,000. But it is quite apparent that Doyle took, as Judge Knox says, a prominent part in various problems relating to the reorganization and that the fee was based upon his help in solving these specialized problems.

If Judge Knox's opinion in that case were to be interpreted as holding that attorneys for a group of unsecured creditors are entitled, as a matter of right, to compensation for participation in the ordinary discussions relating to reorganization, in which every creditor is interested, I would have to decline to follow it as inconsistent with my own views and as establishing a precedent which does not have the sanction of the higher courts, and especially of the Court of Appeals for the Second Circuit. For in an opinion by the latter court, it is definitely stated that ordinary participation in the discussions toward reorganization on behalf of a committee recognized by the court, as such, is not compensable out of the debtor's estate.

The case is In re Paramount Publix Corporation, 2 Cir., 1936, 85 F.2d 588, 590, in which the opinion is written by Judge Augustus N. Hand, who also wrote the

opinion in Re New York Investors, supra. Judge Hand states the rules which govern allowance of fees to attorneys for creditors' committees:

"It is to be noticed that the statutory grant of power to award compensation makes its exercise permissive rather than mandatory, and while, under some circumstances, it might be an abuse of discretion to withhold compensation entirely, in our opinion, the making of any award should be guided by those considerations which have always affected courts of equity and bankruptcy in dealing with such matters.

"Both in proceedings in equity and in bankruptcy simpliciter it is the ordinary rule that attorneys representing creditors, security holders, or stockholders must look for compensation to their clients rather than to the general estate." Citing cases. "This is because the estate is ordinarily represented by a receiver or trustee whose duty it is to take all steps necessary to protect it, and only when he neglects his duty and a suit by others is necessary in order to recover assets or prevent waste will compensation or recoupment of expenses be awarded as though proceedings had been at his instance. * * *

"The provisions of section 77B, sub. c(9) [11 U.S.C.A. § 207, sub. c.(9)] are broader than the provisions of the old Bankruptcy Act and the judge-made rules applicable to equity receiverships and clothe the courts with a wide discretion. Their purpose was to make the expenses necessarily incidental to a reorganization payable out of the estate at large. Such a purpose was reasonable, since a reorganization is a rehabilitation for which the debtor or those whom it in fact represents ought to pay. It cannot, however, be doubted that most large estates are besieged by persons claiming to have played some part in liquidating or rehabilitating them, and that if provision is not made to prevent duplication of work and compensation, their administration will be haphazard and largely dependent on the sporadic notions of the particular judge in charge as to what may vaguely be regarded as equitable. Without some standardization of practice, the broad and useful powers granted by section 77B (c) (9) are likely to produce serious evils of which the flood of applications for high fees in this very case gives warning—a flood fortunately held back by the sound decision of the experienced district judge, though at the expense of much time and labor. Because of the danger of numerous and extravagant allowances, we shall attempt the task of indicating certain methods of administration likely to prove beneficial to estates, and, as we believe, capable of practical operation.

"First of all, we would express our acquiescence in the statement of Judge Coxe that: 'Any creditor or stockholder is entitled as of right to be heard on the question of a permanent appointment of any trustee or trustees, and on the proposed confirmation of any reorganization plan * * * But mere participation in the hearings at which these questions are discussed, or offering advice, suggestions, or criticisms regarding the proposed plan, or on matters of procedure, does not give rise to any claim for compensation from the estate. These are services for which attorneys should look to their own clients for payment.'"

The last paragraph, which the Court of Appeals adopted, could very well stand as the epitome of the views sought to be expressed here. Later cases from other circuits support this view. See, Sullivan & Cromwell v. Colorado Fuel & Iron Co., 10 Cir., 1938, 96 F.2d 219; Gochenour et al. v. Cleveland Terminal Bldg. Co., 8 Cir., 1944, 142 F.2d 991; Godfrey v. Powell, 5 Cir., 1947, 159 F.2d 330. The doctrine is traceable to Trustees v. Greenough, 1881, 105 U.S. 527, 532–535, 26 L.Ed. 1157. And see, Brown v. Gerdes, 1944, 321 U.S. 178, 181–183, 64 S.Ct. 487, 489, 88 L.Ed 659.

To conclude: Without in any way disputing the earnestness of the applicants, their worth as attorneys, the quality of their work, and the good faith with which these services were rendered,—they are not of a character that should be compensated by the estate. More, it was understood, when the committee was given recognition, that services of this character would not be compensated by the estate.

Hence an order will be made denying the application of Messrs. Reuben G. Hunt, Jerome Politzer, and James M. Conners, filed on April 1, 1949, as attorneys for committee of unsecured creditors, for allowance of attorneys' fees and expenses.