HEIRS OF SALVADOR PÉREZ PÉREZ ET AL., Plaintiffs and Appellants, *v.* TOMÁS E. GUAL ET AL., Defendants and Appellees.

No. 11070.  Argued July 1, 1954.—Decided July 21, 1954.

*Daniel Pellón Lafuente* for appellants. *Jorge M. Morales* and *Ramón L. Nevárez* for appellees.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The heirs of Salvador Pérez Pérez leased a building located at 1465 Ponce de León Ave., Santurce, Puerto Rico, to Felipe López, who operated a furniture business under the trade name of Borinquen Furniture Co. López sold that business to Tomás E. Gual, codefendant and appellee herein. In a proceeding for declaratory judgment, we held that Gual was in possession of the latter real property by virtue of a verbal contract of lease entered into by him and Rosa Pérez Pérez and her husband Salvador Pérez y Pérez, the latter being the predecessor of plaintiffs and appellants herein. *Gual* v. *Pérez*, 72 P.R.R. 569. Gual continued to operate the furniture business under the same trade name of Borinquen Furniture Co. Late in June 1951 and in the months that followed the domestic corporation the Borinquen Furniture Co., Inc., mailed to the administrator of the Heirs of Salvador Pérez

y Pérez some checks drawn by that corporation in payment of the rental of the property leased to Gual. [1]

The lessors refused to accept payment on the ground that they had not given Gual, the lessee, any authorization to sublease the real property to the Borinquen Furniture Co., Inc., which was domiciled in the Ribot Building at 1103 Ponce de León Ave., Santurce. Thereupon Gual deposited the rental in question in the San Juan Section of the Municipal Court.

The heirs of Salvador Pérez Pérez then filed an unlawful detainer suit against Tomás E. Gual and the Borinquen Furniture Co., Inc., alleging two main causes of action, to wit:

(1) Sublease of the real property without the lessors' consent, and

(2) Nonpayment of the lease rental which was deposited with the Municipal Court.

---

[1] The text of the first letter and of the check mailed by the Borinquen Furniture Co., Inc., to the Heirs of Salvador Pérez y Pérez, reads as follows:

June 28, 1951
Registered Mail
with Return Receipt

Mr. Salvador J. Pérez
Administrator, Heirs of Pérez
1203 Muñoz Rivera
Río Piedras, P. R.
Dear Sir:

Enclosed please find duly certified check No. 228 for the sum of $218, covering the rent for June 1951 for the premises occupied by our furniture store at 1465 Ponce de León, Santurce.

Trusting this is entirely satisfactory to you, we remain
Very truly yours,
Borinquen Furniture Co., Inc.
By (Sgd.) R. Serrati.

No. 228         Santurce, P. R., June 28, 1951
June 1951 rent      Borinquen Furniture Co., Inc.
for premises at      1103 Ponce de León Ave.    Tel. 2-0707
1465 Ponce de León,      Santurce, Puerto Rico
Santurce, P. R.

Pay to the order of Salvador J. Pérez, Administrator.......... $218
218.00 Dollars

The Royal Bank of Canada         (Sgd.) T. E. Gual
                                    President

Santurce, P. R. — 59–294

Defendants answered and, after the two hearings required by law were held, the lower court rendered judgment dismissing the complaint and ordering plaintiffs to pay the costs and $150 for attorney's fees. Plaintiffs appealed and, while their appeal was pending, we ordered the eviction of defendant Gual in another suit between the same parties. *Heirs of Pérez v. Gual*, 75 P.R.R. 361. As a result of this judgment, plaintiffs-appellants are in possession of the property. This would then be a moot case, except for the pronouncement made in the judgment appealed from ordering plaintiffs to pay the costs and attorney's fees.

The lower court held that Gual had not assigned the occupancy or subleased the real property in dispute, and that he still retains possession. The court found that although Gual proceeded, together with his wife, mother, sister, and aunt, "to organize a corporation known as the Borinquen Furniture Co., Inc., successor of the trade name Borinquen Furniture Co., of which 85% was held by Tomás E. Gual in shares, . . . there exists between defendant Tomás E. Gual and the Borinquen Furniture Co., Inc. a quasi total identity and interest, and it may be concluded that the change in the trade name does not alter or overcome the previous obligations of the Borinquen Furniture Co., since we are concerned with the same business and the same person."

■■ According to the evidence believed by the lower court and its findings, the furniture business located on the premises leased to Gual was now operated by the Borinquen Furniture Co., Inc., of which Gual is its president; that the employees of this corporation are working in that business (Tr. Ev., p. 43); that the corporation has an authorized capital of $200,000, of which $70,000 is paid-in; that Gual owns 85.08 per cent of the capital stock (402 shares of $100 each out of a total of 707), and that the remaining shares are held and owned by a sister of Gual (Tr. Ev., p. 51); that the attempt to pay the June, July, and August 1951 rentals was made by the Borinquen Furniture Co., Inc., by checks drawn

by it, and, upon the lessors' refusal to accept them, Gual himself deposited the amount thereof in the Municipal Court.

We cannot agree with the trial court that the only thing that has happened here, as respects the furniture business which is operated in the leased premises, is a mere change of trade name.

It is known that a corporation has juridical personality, separate and distinct from its members and that the general rule is that the existence of a corporation, independent of its stockholders, cannot be ignored or disregarded. Section 3 of our *Law of Private Corporations* (Act No. 30 of March 9, 1911, as amended); § 27(2) of the Civil Code, 1930 ed.; 1 Fletcher, *Cyclopedia of Corporations* (Permanent ed.), § 28, pp. 103, 104; 1 Thompson on *Corporations*, § 9, p. 14; 13 Am. Jur., § 70, p. 213; *Swiggett* v. *Swiggett, Inc.*, 55 P.R.R. 72; *Sprouse* v. *C.I.R.*, 122 F. 2d 972; *Re Mt. Sinai Hospital*, 164 N.E. 871; *International Shoe Co.* v. *Washington*, 326 U. S. 310, 90 L. Ed. 95; *State on Information of McKittrick ex rel. California City* v. *Mo. Utilities Co.*, 96 S. W. 2d 607.[2] There are, however, exceptions to that rule. As stated in *Swiggett* v. *Swiggett, Inc., supra*, citing from a California case, the acts and obligations of a corporation can be legally recognized as those of a particular person, and vice versa, provided the following circumstances are present: "First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote an injustice."[3] See also 1 A.L.R. 610.

---

[2] For other cases, see Permanent A.L.R. Digest, vol. 3, pp. 891 to 893.

[3] This doctrine, known as "to pierce the corporate veil," has been applied, among others, in the following cases:

(1) To evade tax payment; (2) where the corporate business is merged with those of the stockholders, as for example, where the stockholders do business without attempting to maintain the corporate business separate

34 A.L.R. 597, and cases cited in A.L.R. Blue Book Permanent Volume, pp. 338 to 342, and Permanent Volume No. 2, p. 85; 1 Fletcher, *op. cit.* § 41, p. 134; 1 Thompson, *op cit.*, § 10, p. 16.

■■ Evidently, we are not concerned here with any of the exceptions justifying disregard or ignorance of the existence of the corporation, independently of its stockholders. The first to establish a distinction was Guál himself. We should bear in mind in this connection that when the corporation wrote to the lessors and sent them a check in payment of the rental, which they refused to accept, Gual, in his own name and not in the name of the corporation, deposited the rental in the Municipal Court. It might be argued that if Gual and the corporation were one and the same person, the fact that he made the deposit in his own name is immaterial. However, the fact that Gual did not insist that it was he and not a sublessee who tendered the payments made by the corporation, is significant.

On the other hand, the defense of identity of persons alleged by Gual is tantamount to permitting the stockholders themselves to determine, to suit their interests, when the corporation has independent personality and when it is merged with its stockholders. The objective pursued by the "to pierce the corporate veil" doctrine is, as far as we know, different. It is doubtful, or at least very questionable, whether in view of the facts of the instant case it should be considered that the acts of the corporation, in so far as they refer to the enjoyment of the use of the leased premises, are the acts of Gual, since the evidence points to the fact that for other purposes the corporation has personality separate from its stockholders. The least that could be said is that the text of the letters written by the Borinquen Furniture Co., Inc. to the lessors was sufficient to inform the latter that the furniture business which was established on the premises

---

from their personal business; (3) to evade the performance of obligations; (4) where the corporation is organized with capital insufficient to answer for its debts; (5) to evade legal provisions. See *Cruz* v. *Ramírez de Arellano, et al.*, decided February 12, 1954.

leased to Gual was being operated by a corporation and not by Gual. That was at least reasonable indication that Gual had violated our Reasonable Rents Act in subletting the property in litigation without the written consent or authorization of the lessors, in which case eviction was proper. Section 12-A (3) of Act No. 201 of May 15, 1948 (Sess. Laws, p. 574).

■ Section 30 of the Urban Rents Act [4] of Spain also forbids the sublease of business premises without the express and written authorization of the lessor. In construing that Section, the Supreme Court of Spain stated as follows:

"2) Regardless of the juridical characterization given to the organization of a partnership by the tenant and a third party, thereby giving rise to a new personality which actually operates the industry in the leased premises, it is evident that the owner's consent will be necessary before the new personality takes possession of said premises." (Judgment of February 6, 1948, *Revista General de Legislación y Jurisprudencia,* vol. 21, p. 402.)

The decisions of the American courts as to when a covenant against subletting is broken, are not uniform. Many decisions hold that the covenant is not broken in the following cases:

1. Where the tenant takes another into partnership with him and lets such person into joint possession of the premises;

2. By admission or withdrawal by the tenant (a partnership) of partners; and

3. By dissolution of the firm and a transfer of the possession to one of the partners.

Other decisions are contrary to the last proposition. 51 C.J.S., § 33, p. 546. We must bear in mind, in considering these authorities, that a partnership in American law has no independent juridical personality. It has been held, however, that assignment of the leased business premises by a partnership to a corporation is a breach of covenant. *Rubin* v. *Leosatis,* 166 A. 428.

---

[4] That Section provides:

"Art. 30. The express and written authorization of the lessor shall be an indispensable requisite for the sublease of business premises."

The unlawful detainer proceeding should have prospered and, consequently, the judgment appealed from is reversed and appellants are thus relieved from the payment of costs and attorney's fees. Otherwise, the decision of this proceeding, as indicated hereinbefore, has no practical object.

Judgment will be rendered reversing the judgment appealed from without including therein any relief as to the unlawful detainer, with costs on defendants.

Mr. Justice Belaval did not participate herein.