**In the Matter of F. P. NEWPORT COR-
PORATION, Ltd., a corporation,
Petitioner.**

No. 25308-Bkcy.

United States District Court
S. D. California, Central Division.

Dec. 23, 1955.

Morris Lavine, Los Angeles, Cal., for petitioner.

Bailie, Turner, Lake & Sprague, by Norman Bailie, Los Angeles, Cal., for trustee.

Edmund Nelson, Los Angeles, Cal., for Bank of America.

YANKWICH, Chief Judge.

The involved history of this bankruptcy was given in a prior opinion, In re F. P. Newport, D.C.Cal.1954, 123 F.Supp. 95. Before me is petition to review an Order of the Referee denying the petition of F. P. Newport, a controlling stockholder of the bankrupt, for fees under claimed contract and for extraordinary services.

The provisions for reviewing the orders of a Referee by petition must be complied with. Bankruptcy Act, § 39, sub. c, 11 U.S.C.A. § 67, sub. c; In re Finkelstein, D.C.Pa.1925, 3 F.2d 1006; California State Board of Equalization

v. Sampsell, 9 Cir., 1952, 196 F.2d 252. The petition for review is signed by Newport's attorney. However, its text indicates that it is taken on behalf of Newport, the "person aggrieved." Bankruptcy Act, § 39, sub. c, 11 U.S.C.A. § 67, sub. c. So we consider the petition as though signed by the "aggrieved party".[1] More, an administrative matter relating to fees may be reviewed even in the absence of a formal petition. See Goodman v. Street, 9 Cir., 1933, 65 F.2d 686.

■ The petition was filed with the Clerk of the Court on November 23, 1955, or within *ten days* after the Order. It was timely. The filing with the Clerk was a filing with the Referee. Bankruptcy Act, § 51(4), 11 U.S.C.A. § 79(4); General Order 20, 11 U.S.C.A. following section 53; In re Sadler, D.C.Cal.1952, 104 F.Supp. 886, 889. More, this Court has the right to entertain a review filed out of time. Bankruptcy Act, § 39, sub. c, 11 U.S.C.A. § 67, sub. c; Pfister v. Northern Illinois Finance Corp., 1942, 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146; In re C & P Co., D.C.Cal.1945, 63 F.Supp. 400, 403–404; Oppenheimer v. Oldham, 5 Cir., 1949, 178 F.2d 386, 390.

■ By the same token there is no merit to the contention of the petitioner that he was entitled to a hearing upon his objections to the Referee's findings. Our Local Rule 7 which applies to findings of Referees as well as to findings of the Court specifically provides:

"If objections are filed within the time limited herein, the judge may thereafter require the attorneys interested to appear before him or he *may sign* the document as prepared or as modified by him."

This provision has never been interpreted as making a hearing *obligatory* whenever objections to findings are filed. Indeed, such hearings are a rarity. The Court either signs the findings as proposed or modifies them if the objections are valid, without a hearing. However, on review, the objections may be considered in order to determine the sufficiency of the findings. So considered, we find the objections made here to be without merit. The findings of the Referee here under attack are amply justified under the law and the facts in the voluminous record with which we have had occasion to familiarize ourselves in the prior and present review.

■ The findings of a Referee are to be accepted unless they are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; General Order 47. And see, Yankwich, Impact of the Federal Rules of Civil Procedure on Bankruptcy, 1954, 42 Cal.L.Rev. 738, 743–744.

■ The Referee was correct in finding that the Order of Judge McCormick dated November 21, 1935, authorizing the then receiver to employ Newport at a salary of $250 per month until "the further order" of the Court terminated when the Trustee was elected and qualified on February 23, 1937. The Bankruptcy Act then in force had a provision identical with the present one which limits the power of the Court to appoint a receiver "until it [the petition] is dismissed or the trustee is qualified". Bankruptcy Act, § 2, sub. a(3), 11 U.S.C.A. § 11, sub. a(3). The receivership terminated upon the appointment of the Trustee. In re Olsen, 2 Cir., 1934, 70 F.2d 253; Levin v. Barker, 8 Cir., 1941, 122 F.2d 969, 973. And the Bankruptcy Act specifically provides that upon the appointment of the Trustee, he shall

"(1) collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estates as expeditiously as is compatible with the best interests of the parties in interest." Bankrupt-

---

1. In re DuPont Young Mfg. Co., D.C. Mass.1923, 290 F. 393, 394, which the Referee cites in his certificate, the petition signed by the attorneys did "not disclose on whose behalf they acted." Here the petition *does* disclose that the attorney acted for Newport.

cy Act, § 47, sub. a(1), 11 U.S.C.A. § 75, sub. a(1).

After the Trustee qualifies the only duties which the Receiver can perform are to file his accounts and turn the property over to the Trustee. And the Court cannot confer upon the Receiver duties which only the Trustee can perform. Stanton v. Busch, 9 Cir., 1932, 59 F.2d 668, 669.

The Bankruptcy Act limits the compensation of receivers. Bankruptcy Act, § 48, sub. a(1, 2), 11 U.S.C.A. § 76, sub. a(1, 2). There can be no recovery of fees unless the employment is authorized. In re Owl Drug Co., D.C.Nev.1936, 16 F.Supp. 139, 147–149.

"Estates should not be unnecessarily burdened with the expenses of a receivership after the appointment of a trustee in bankruptcy." Levin v. Barker, supra, 122 F.2d at page 973.

Receivers, or their attorneys, cannot be paid compensation unless appointed in compliance with the provisions of the Bankruptcy Act or General Orders 40, 42, 44 and 45. In re Eureka Upholstering Co., 2 Cir., 1931, 48 F.2d 95; In re Joslyn, 7 Cir., 1955, 224 F.2d 223.

We consider the issues presented in the light of these principles. With the election of a trustee the Order of Judge McCormick came to an end, it became *functus officio*, as the phrase is. Newport's employment by the Trustee required a new Order. The persons connected with the estate, including Newport, shared this view. For on May 15, 1937, the Trustee petitioned the Referee *for authorization to employ* Newport. This was granted by Order dated May 17, 1937, which authorized the employment of Newport at a salary of $250 per month, the employment and salary to continue "so long as F. P. Newport shall be employed *by said Trustee* or until the further Order of this Court." (Emphasis added.) This contemporaneous interpretation of the Order of Judge McCormick conforms to the view of the law stated in the decisions referred to. So there is no substance to the argument that the Order of Judge McCormick continued in effect *despite the superseding* Order of the Trustee. Under the very wording of the Order, the employment could be terminated *either by the Trustee* or by the Referee. It was terminated by the Trustee as of December 1, 1943, by letter dated November 26, 1943. The letter clearly indicated that the cash position of the company prompted this action. Significantly the Trustee inserted this clause:

"Should you care to bring this up for review, it will be quite all right with the writer whatever disposition the Court sees fit to make of it."

No petition to review was ever filed. A statement filed in the case shows that Newport was paid $5,597.53 during the receivership and $19,745.35 during the trusteeship. The latter amount Newport retained under an Order which he now claims the Referee had no right to make. When to this are added certain allowed expenses and commissions of sales we have a total of $25,466.62. The Referee was asked to make an additional allowance of $31,750.00 as unpaid salary from November 30, 1943, to May 3, 1954, at the rate of $250 per month.

The Referee was right in rejecting the claim. Regardless of the wording of the Order of Judge McCormick, the selection of a trustee following adjudication *automatically* terminated the powers of the receiver including the power to employ Newport. More, it would be inequitable to hold that because an Order provided that it "shall continue until the further Order of this Court" a person may *consent* to the substitution of another employment by a different officer of the Court, *accept* substantial fees under it, *acquiesce* in its termination, *stand* mute for eleven years and make no claim, and then, *after having unsuccessfully attempted to prevent liquidation of the estate by sale*, *claim* accumulated back salary under an expired Order.

As the controlling stockholder of the bankrupt corporation, Newport was interested in preserving the assets of

the estate and it was his duty to help do so. Bankruptcy Act, § 7, 11 U.S.C.A. § 25. He kept the estate in bankruptcy for over nineteen years. Even at the last moment, as the previous opinion shows, he resisted liquidation. Granted that the delay may have turned what was a bankrupt estate nineteen years ago into a solvent estate, it was just as much to the interest of his corporation to preserve its good name by realizing the greatest value for its assets as it was that of the creditors to be paid their claims in full. Indeed, throughout the proceedings, Judges and Referees seemed to have listened to the plea that eventually the problems which led to bankruptcy would be solved if time enough were given. They were, therefore, very lenient. A liquidation by sale was ordered only when it became apparent that without it there could be no foreseeable termination of the bankruptcy. Nor do we see any justification in the record for the allowance of some $208,850 or any part of it for alleged extraordinary services and expenses. No written Order was ever asked for or made agreeing to compensate Newport for any extraordinary services during the contractual period with the trustee and receiver or thereafter. The Referee was right in rejecting an offer to prove an oral understanding with the Receiver and Trustee, *now dead*, that compensation was to be paid over and above the minimum allowed. Agreements of this character, whether relating to the services of attorneys or others, are not binding on the Court, are contrary to public policy and to the policy of the Bankruptcy Act. See, General Orders 40, 42 and 44; Albers v. Dickinson, 8 Cir., 1942, 127 F.2d 957, 961; [cited with approval by the Court of Appeals for the Ninth Circuit in Beecher v. Leavenworth State Bank, 9 Cir., 1950, 184 F.2d 498, 501]; Weil v. Neary, 1929, 278 U.S. 160, 172–174, 49 S.Ct. 144, 73 L.Ed. 243; Crutcher v. Logan, 5 Cir., 1939, 102 F.2d 612; Cox v. Elliott, 8 Cir., 1941, 122 F. 2d 851.

In interpreting the Bankruptcy Act, courts have rejected repeatedly the contention that, in the *absence of specific* prohibitions in the Bankruptcy Act, the bankruptcy court, in the exercise of equitable powers, *may* allow compensation in extraordinary cases. Illustrative of this attitude are the following quotations from cases decided *under the prior* and *present* Bankruptcy Acts:

"The Bankruptcy Act carefully regulates the compensation and expenses which may be allowed in bankruptcy. * * * *The general policy of the act denies compensation unless expressly provided.*" In re Realty Associates Securities Corporation, 2 Cir., 1934, 69 F.2d 41, 42. (Emphasis added.)

"The present Bankruptcy Act *plainly endeavors to restrict allowances* from the bankrupt estate. In re Realty Associates Securities Corporation, 2 Cir., 69 F.2d 40; In re Kinnane Co.'s Estate, 6 Cir., 242 F. 769." In re First Bond & Mortgage Co., 5 Cir., 1935, 74 F.2d 930, 932. (Emphasis added.)

"But passing this weakness in the appellant's case, he encounters the rule which this court has frequently enforced that no compensation can be allowed for 'administrative' services unless *the person performing them obtained authority from the court in limine.*" In re Postal Telegraph & Cable Corp., 2 Cir., 1941, 119 F.2d 861, 863.

"Were it the law that creditors who voluntarily perform acts which prove to be beneficial to the estate should or must be allowed compensation, courts of bankruptcy would be confronted in many instances with numerous claims for compensation for 'voluntary' assistance. In re Owl Drug Co., D.C.Nev. [1936], 16 F.Supp. 139, 148." Cox v. Elliott, supra, 122 F.2d at page 852.

Behind the rule is the desire to discourage *duplication* of services:

"For administrative reasons Congress has wisely provided that the trustee shall have *sole* responsibil-

ity for administering the estate." In re Joslyn, 7 Cir., 1955, 224 F.2d 223, 225. "* * * Another expression for the same principle is the familiar rule that an officer is expected to perform his duties personally and not through the agency of another person who in turn would look to the estate for compensation. No duplication of expenses through trespassing on another's assigned field of duties, and equally none through voluntary delegation of powers or duties." (Collier on Bankruptcy, 14th Ed., 1954, Vol. 3, pp. 1426–1427)

And see the writer's opinions in Re Owl Drug Co., supra, 16 F.Supp. at pages 147–149, and in Re Alta Vineyards Co., D.C.Cal., 1949, 87 F.Supp. 608; Gochenour v. Cleveland Terminals Bldg. Co., 6 Cir., 1944, 142 F.2d 991, 994–995; Beecher v. Leavenworth State Bank, 9 Cir., 1950, 184 F.2d 498, 501; In re Joslyn, supra, 224 F.2d at page 225.

In the circumstances, both on legal and equitable principles, the Referee was right in denying additional compensation and in dismissing the claim with prejudice. His Order is affirmed.